**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| In re: | **Joint Administration Pending** |
| Kidney and Hypertension Center, PLC d/b/a Grand Forks Clinic, | Case No.: 26-30886 |
| The Medical Group, LLC, | Case No.: 26-30888 |
| North Dakota Dialysis, LLC, | Case No.: 26-30889 |
| Aurora Dialysis, LLC, | Case No.: 26-30890 |
| Kidney Institute of North Dakota, LLC, | Case No.: 26-30891 |
| KDJ Investment Group, LLC, and | Case No.: 26-30892 |
| KDJ Properties, LLC, | Case No.: 26-30893 |
| | Chapter 11 Cases |
| Debtors.[1] | |

**MOTION FOR ORDER AUTHORIZING MAINTENANCE OF EXISTING BANK ACCOUNTS AND CHECK STOCK AND CONTINUED USE OF CASH MANAGEMENT SYSTEM**

1. Debtors Kidney and Hypertension Center, PLC d/b/a Grand Forks Clinic ("Grand Forks Clinic"), The Medical Group, LLC ("Medical Group"), North Dakota Dialysis, LLC ("ND Dialysis"), Aurora Dialysis, LLC ("Aurora Dialysis"), Kidney Institute of North Dakota, LLC ("Kidney Institute"), KDJ Investment Group, LLC ("KDJ Investment"), and KDJ Properties, LLC ("KDJ Properties," and, together with Grand Forks Clinic, Medical Group, ND Dialysis, Aurora Dialysis, Kidney Institute, and KDJ Investment, the "Debtors") hereby file this Motion for Order

[1] In accordance with Fed. R. Bankr. P. 2002(n) and 1005 and 11 U.S.C. § 342(c), as applicable, the Debtors' addresses and Employer Identification Numbers (EINs) are as follows: Kidney and Hypertension Center, PLC d/b/a Grand Forks Clinic (EIN #0821); The Medical Group, LLC (EIN #3765); North Dakota Dialysis, LLC (EIN #3768); Kidney Institute of North Dakota, LLC (EIN #6471); and KDJ Investment Group, LLC (EIN #2199), each located at 5750 S Washington Street, Grand Forks, ND 58201. Aurora Dialysis, LLC (EIN #8084) is located at 1451 44th Avenue South, Suite 104D, Grand Forks, ND 58201, and KDJ Properties, LLC (EIN #1920) is located at 645 Beacon Circle, Grand Forks, ND 58201.

Authorizing Maintenance of Existing Bank Accounts and Check Stock and Continued Use of Cash Management System (the "Motion"). The Motion should be granted because it will avoid delays in the Debtors' receipt of customer payments and the Debtors' payment of postpetition obligations to employees, vendors, and service providers. Avoidance of this delay will ensure as smooth a transition as possible into Chapter 11.

2. In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION

3. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and Fed. R. Bankr. P. 5005. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The petitions commencing these Chapter 11 cases were filed on October 16, 2026 (the "Petition Date"). The cases are currently pending before this Court.

4. This Motion arises under 11 U.S.C. §§ 105(a), 365(b), 1107, and 1108. This Motion is filed under Fed. R. Bankr. P. 9013 and 9014 and Local Rules 9013-1 and 9014-1. Notice of the hearing on this Motion is provided pursuant to the Federal Rules of Bankruptcy Procedure and the Notice and Service Requirements adopted pursuant to Local Rule 2002-1.

5. The Debtors have filed a contemporaneous motion requesting expedited relief pursuant to Fed. R. Bankr. P. 9006(c) and Local Rule 9006-1.

## BACKGROUND

6. On the Petition Date, the Debtors filed voluntary petitions for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses as debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108. There is presently no pending request or motion for the appointment of a trustee or examiner, and no official committee of unsecured creditors has been appointed.

7. Further background information about the Debtors and facts related to other first day motions are set forth in the Declaration of Dr. Khaled Rabadi in Support of Chapter 11 Petition and First Day Motions.

8. As of the Petition Date, the Debtors maintain fifteen bank accounts, which are as follows:

| Debtor | Bank | Account Type | Purpose | Account No. |
|---|---|---|---|---|
| **Kidney and Hypertension Center, PLC d/b/a Grand Forks Clinic** | Choice Bank | Operating Account | Everyday Transactions | *3794 |
| | | Checking Account | PPP Loan Transactions in 2020 | *5409 |
| | First Western State Bank | Checking Account | Payments on FWBT Loans | *5990 |
| | PNC Bank | Checking Account | Payments on PNC Loan | *1273 |
| **The Medical Group, LLC** | Choice Bank | Checking Account | Self-pay Services | *5900 |
| **North Dakota Dialysis, LLC** | Choice Bank | Checking Account | Private loan transactions | *0809 |
| **Aurora Dialysis, LLC** | Choice Bank | Operating Account | Everyday Transactions | *3816 |
| | | Checking Account | PPP Loan Transactions in 2020 | *5508 |
| | | Checking Account | Patient Assistance and Medical Equipment Purchases | *3896 |
| **Kidney Institute of North Dakota, LLC** | Choice Bank | Operating Account | Everyday Transactions | *8056 |
| **KDJ Investment Group, LLC** | Choice Bank | Checking Account | Initial Construction Account | *5004 |
| | First Western State Bank | Checking Account | Clinic Construction | *5785 |

| Debtor | Bank | Account Type | Purpose | Account No. |
|---|---|---|---|---|
| | | Escrow Account | Construction Account | *8507 |
| **KDJ Properties, LLC** | First Western State Bank | Checking Account | Payments on Residence Property Loan | *1065 |
| | United Valley Bank | Checking Account | Payments on Residence Property | *9433 |

(the "Bank Accounts").[2]

9. The Debtors use the Bank Accounts to receive payments from customers and to pay general business expenses.

10. The Debtors also use checks and ACH payments to pay vendors and employees. The Debtors print their own checks through QuickBooks.

## RELIEF REQUESTED

11. The United States Trustee has established operating guidelines for debtors in possession who operate their businesses in Chapter 11. One such provision requires a debtor in possession to open new bank accounts and to close all existing accounts. This requirement, designed to provide a clear demarcation between pre- and postpetition claims and payments, helps to protect against the inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the Petition Date.

12. The Debtors request that the Court waive the requirement that the Bank Accounts be closed and new postpetition bank accounts be opened. Continued use of the Bank Accounts, existing check stock, and the cash management system is important to ensure a smooth transition

[2] Certain of the Bank Accounts are leftover accounts for various other purposes (i.e., construction accounts and PPP accounts) that the Debtors do not require for ongoing operations. The Debtors are willing to close those accounts and transfer the funds to the Debtors' main operating accounts but identify the accounts for the purposes of transparency.

into Chapter 11. Requiring the Debtors to open new bank accounts at this early and critical stage of the case would be disruptive to the Debtors' operations.

13. For example, the Debtors have an immediate need to utilize cash collateral to pay critical operating expenses. The establishment of new bank accounts would prevent or significantly impede the Debtors' ability to meet those critical operating obligations.

14. The Debtors' customers, including from governmental services such as Medicare and Medicaid, make regular payments to the Debtors' existing Bank Accounts. The process of instituting new payment instructions would delay the Debtors' receipt of revenue at this critical juncture.

15. Fed. R. Bankr. P. 9006(d) provides that "[a] written motion . . . and notice of any hearing must be served at least 7 days before the hearing date, unless the court or these rules set a different period." See also Fed. R. Bankr. P. 2002(a) (generally providing for a 21-day notice period for certain relief). Local Rule 9006-1, however, allows a party to request expedited relief. D.N.D. Bankr. L.R. 9006-1 ("Any party seeking an expedited hearing or reduced notice period must list the grounds of the motion and recommend a hearing date or notice period. A motion seeking a notice period of less than seven days will be denied absent extraordinary circumstances."). See also Fed. R. Bankr. P. 9006(c) (allowing a court to, for cause, and with or without a motion or notice, reduce the time to provide notice).

16. In addition, many of the Debtors' obligations are paid by electronic transfer, like ACH payments. If the Debtors were forced to open new accounts, the Debtors would need to create new payment systems, which would take considerable time and expense, and could also cause a delay in paying postpetition, ordinary course expenses of the Debtors' business. Such a delay in paying postpetition obligations may cause a delay in the Debtors' delivery of goods and

services to their customers, which is not in the best interests of the Debtors' creditors and the bankruptcy estate.

17. Finally, the Debtors' existing cash management system is specifically designed for their business.

18. Consequently, maintenance of the existing Bank Accounts and check stock and the continued use of the cash management system are not only essential but are in the best interest of all creditors and other parties in interest in this case.

19. The Debtors have taken steps to stop payment on all prepetition debt paid by checks that have not cleared the Debtors' Bank Accounts. Additionally, the Debtors are reviewing their books and records to identify any payments made without authorization. To the extent necessary, the Debtors will commence actions against those parties receiving payments inadvertently under 11 U.S.C. § 549 or may seek additional relief from this Court.

20. The United States Trustee's concerns of creating a clear line of demarcation between pre- and postpetition obligations can be addressed in this case without the necessity of closing the Bank Accounts. Because the Debtors print their own checks, they will create a conspicuous gap in the numbering sequence and will include on postpetition checks a "Debtor in Possession" designation so that they and the Banks can easily discern prepetition checks from those issued postpetition. These precautions will increase the ease of differentiating between pre- and postpetition payments and help ensure that no prepetition payments are honored except as specifically authorized by this Court.

21. Subject to a prohibition against honoring prepetition checks without specific authorization of this Court, the Debtors request that the Bank Accounts be deemed debtor-in-possession accounts and that the Debtors be authorized to maintain and continue the use of these

accounts in the same manner and with the same account numbers, styles, and forms as those employed prepetition.

22. If the relief requested herein is granted, the Debtors will not pay, and the Banks will be directed not to pay, any checks drawn on the Bank Accounts prepetition other than as specifically authorized by this Court.

**BASIS OF RELIEF REQUESTED**

23. The bankruptcy court has the authority to waive the strict enforcement of bank account closing requirements imposed pursuant to the guidelines adopted by the Office of the United States Trustee, and such relief is routinely granted. *See, e.g., In re Twin Falls Oil Service, LLC*, 24-30525 (Bankr. D.N.D. Dec. 30, 2024), ECF No. 43; *In re Lutheran Social Services of North Dakota*, 21-30203 (Bankr. D.N.D. May 19, 2021), ECF No. 34; *In re Drain Services Inc.*, 23-30352 (Bankr. D.N.D. Oct. 6, 2023), ECF No. 31.

24. As detailed above, continued use of the Bank Accounts, existing check stock, and the cash management system is important to ensure a smooth transition into Chapter 11. Requiring the Debtors to open new bank accounts at this early and critical stage of the case would be disruptive to the Debtors' operations. Consequently, maintenance of the existing Bank Accounts and check stock and the continued use of the cash management system are not only essential but are in the best interest of all creditors and other parties in interest in this case.

**CONCLUSION**

25. For the foregoing reasons, the Debtors respectfully request that the Court grant the relief requested in the Motion.

26. This Motion is accompanied by a proposed order and proof of service.

27. Pursuant to Fed. R. Bankr. P. 9006(d), this Motion is supported by the verification of facts in the Affidavit of Dr. Khaled Rabadi attached hereto.

28. Pursuant to Local Rule 9014-1(B), the Debtors hereby give notice that they may, if necessary, call Dr. Khaled Rabadi, whose business address is 5750 S. Washington St., Grand Forks, ND 58201, to testify regarding the facts set forth in the Motion.

29. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

**WHEREFORE**, the Debtors respectfully request that this Court enter an order:

A. Authorizing the continued use of the Bank Accounts and check stock and the Debtors' existing cash management system; and

B. Granting such other relief as the Court deems just and equitable.

Dated: October 19, 2026

*/e/ Steven R. Kinsella*

Steven R. Kinsella (#09514)
skinsella@fredlaw.com
**FREDRIKSON & BYRON, P.A.**
60 South Sixth Street, Suite 1500
Minneapolis, MN 55402-4400
(612) 492-7000
skinsella@fredlaw.com

Austin A. Eggl (#09672)
**FREDRIKSON & BYRON, P.A.**
51 Broadway, Suite 400
Fargo, ND 58102-4991
(701) 237-8200
aeggl@fredlaw.com

**PROPOSED ATTORNEYS FOR DEBTORS**

**AFFIDAVIT**

I, Khaled Rabadi, am the owner of Kidney and Hypertension Center, PLC d/b/a Grand Forks Clinic, The Medical Group, LLC, North Dakota Dialysis, LLC, Aurora Dialysis, LLC, Kidney Institute of North Dakota, LLC, KDJ Investment Group, LLC, and KDJ Properties, LLC, and I declare under penalty of perjury that the facts set forth in the preceding Motion for Order Authorizing Maintenance of Existing Bank Accounts and Check Stock and Continued Use of Cash Management System are true and correct, according to the best of my knowledge, information, and belief.

Dated: October 19, 2026

Signed:______________________________
Khaled Rabadi

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

---

In re:

| | |
|---|---|
| Kidney and Hypertension Center, PLC d/b/a Grand Forks Clinic,<br>The Medical Group, LLC,<br>North Dakota Dialysis, LLC,<br>Aurora Dialysis, LLC,<br>Kidney Institute of North Dakota, LLC,<br>KDJ Investment Group, LLC, and<br>KDJ Properties, LLC,<br><br>Debtors. | Case No.: 26-30886<br>Case No.: 26-30888<br>Case No.: 26-30889<br>Case No.: 26-30890<br>Case No.: 26-30891<br>Case No.: 26-30892<br>Case No.: 26-30893<br><br>Chapter 11 Cases |

---

**ORDER AUTHORIZING MAINTENANCE OF EXISTING BANK ACCOUNTS AND CHECK STOCK AND CONTINUED USE OF CASH MANAGEMENT SYSTEM**

---

Debtors Kidney and Hypertension Center, PLC d/b/a Grand Forks Clinic ("Grand Forks Clinic"), The Medical Group, LLC ("Medical Group"), North Dakota Dialysis, LLC ("ND Dialysis"), Aurora Dialysis, LLC ("Aurora Dialysis"), Kidney Institute of North Dakota, LLC ("Kidney Institute"), KDJ Investment Group, LLC ("KDJ Investment"), and KDJ Properties, LLC ("KDJ Properties," and, together with Grand Forks Clinic, Medical Group, ND Dialysis, Aurora Dialysis, Kidney Institute, and KDJ Investment, the "Debtors") filed a Motion for Order Authorizing Maintenance of Existing Bank Accounts and Check Stock and Continued Use of Cash Management System (the "Motion"). On October 23, 2026, the Court held a hearing on the Motion. For reasons stated on the record, the Court finds that grounds exist to grant the relief requested in the Motion.

**THEREFORE, IT IS ORDERED:**

1. The Motion is **GRANTED.**

2. The Debtors are authorized to designate, maintain, and continue to use, with the same account numbers, the following bank accounts:

| Debtor | Bank | Account Type | Purpose | Account No. |
|---|---|---|---|---|
| **Kidney and Hypertension Center, PLC d/b/a Grand Forks Clinic** | Choice Bank | Operating Account | Everyday Transactions | *3794 |
| | | Checking Account | PPP Loan Transactions in 2020 | *5409 |
| | First Western State Bank | Checking Account | Payments on FWBT Loans | *5990 |
| | PNC Bank | Checking Account | Payments on PNC Loan | *1273 |
| **The Medical Group, LLC** | Choice Bank | Checking Account | Self-pay Services | *5900 |
| **North Dakota Dialysis, LLC** | Choice Bank | Checking Account | Private loan transactions | *0809 |
| **Aurora Dialysis, LLC** | Choice Bank | Operating Account | Everyday Transactions | *3816 |
| | | Checking Account | PPP Loan Transactions in 2020 | *5508 |
| | | Checking Account | Patient Assistance and Medical Equipment Purchases | *3896 |
| **Kidney Institute of North Dakota, LLC** | Choice Bank | Operating Account | Everyday Transactions | *8056 |
| **KDJ Investment Group, LLC** | Choice Bank | Checking Account | Initial Construction Account | *5004 |
| | First Western State Bank | Checking Account | Clinic Construction | *5785 |
| | | Escrow Account | Construction Account | *8507 |

| Debtor | Bank | Account Type | Purpose | Account No. |
|---|---|---|---|---|
| **KDJ Properties, LLC** | First Western State Bank | Checking Account | Payments on Residence Property Loan | *1065 |
| | United Valley Bank | Checking Account | Payments on Residence Property | *9433 |

(together, the "Bank Accounts").

3. To create a clear delineation between checks issued prepetition and checks issued postpetition, the Debtors agree to create a conspicuous gap in the numbering sequence. The Debtors will also use a "Debtor in Possession" designation as necessary. The Debtors are authorized to treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession.

4. First Western State Bank, Choice Bank, PNC Bank, and United Valley Bank (collectively, the "Banks") are authorized to continue to service and administer the Bank Accounts as accounts of the Debtors as debtors in possession without interruption and in the usual and ordinary course. The Banks are authorized to service and administer the Bank Accounts in compliance with the requirements set forth in 11 U.S.C. § 345.

5. The Banks are authorized to receive, process, honor, and pay any and all checks and drafts drawn on the Bank Accounts after the Petition Date by the holders or makers thereof; provided, however, that the Banks may not honor and pay any check drawn or used by the Debtors before October 16, 2026, for which the Debtors have placed a stop payment in writing.

6. The Banks are further authorized to debit the Debtors' Bank Accounts in the ordinary course of business without need for further order of this Court for: (a) all checks, items, and other payment orders drawn on the Bank Accounts which are cashed at the Banks' counters or exchanged for cashier's checks by the payees thereof prior to the Banks' receipt of notice of

filing of the petition; (b) all checks, ACH entries, and other items deposited or credited to one of the Debtors' Bank Accounts with the Banks prior to filing of the petition which have been dishonored, reversed, or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to filing of the petition; and (c) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to the Banks as service charges for the maintenance of the cash management system and Bank Accounts.

7. The Banks may rely on the representations of the Debtors with respect to whether any check, item, or other payment order drawn or issued by the Debtors prior to filing of the petition should be honored pursuant to this or any other order of this Court, and the Banks will not have any liability to any party for relying on such representations by the Debtors as provided for herein.

Dated:

SHON HASTINGS, JUDGE
UNITED STATES BANKRUPTCY COURT